The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 12, 2019

## 2019COA142

**No. 13CA1435, *People v. Burnell* — Constitutional Law — Due
Process — Sixth Amendment — Right to Be Present at Trial;
Juries — Conduct Affecting Juries — Harmless Error**

In this case, the trial court had informed counsel and the
defendant that they should stay within fifteen to twenty minutes of
the courthouse while the jury deliberated.  The jury returned a
verdict on the morning of the third day of deliberations.  When the
defendant still had not arrived after approximately forty minutes,
the trial court — without ever conducting an inquiry into the cause
of the absence — deemed the absence to be voluntary and received
the verdict in open court.  A division of the court of appeals
concludes that the trial court erred in doing so, but that in the
absence of some indication that there was a conflicted juror, the
error was harmless beyond a reasonable doubt.

COLORADO COURT OF APPEALS                                  **2019COA142**

Court of Appeals No. 13CA1435
Mesa County District Court No. 12CR1299
Honorable Brian J. Flynn, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Paul Joshua Burnell,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TOW
Richman and Harris, JJ., concur

Announced September 12, 2019

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeanne Segil, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Paul Joshua Burnell, appeals his convictions for third degree assault of an at-risk victim and harassment.  We affirm.

## I.    Background

¶ 2    Burnell was living with his parents, John and Arline Burnell,[1] when he got into an argument with John.  As the argument went on, John told him to leave and threatened to call the police if he did not.  Burnell then took the phone from John, grabbed him by the wrists, and made him sit down on their couch.  John, who takes medication that causes him to bruise easily, was left with bruised and cracked skin where Burnell had grabbed him.  After spending approximately thirty minutes yelling at John, Burnell gathered some of his belongings and left the house.

¶ 3    John then drove to the park to pick up Arline and tell her what had happened.  John and Arline did not immediately call the police, though they had some concern for their safety.  Instead, they discussed the matter and first called one of Arline's colleagues, a

---

[1] Because John and Arline Burnell share a surname with the defendant, we refer to them by their first names — and defendant by his surname.

psychiatrist and psychologist who was familiar with Burnell, to seek outside input. Several hours after Burnell had left, they called the police and reported the incident.

¶ 4 Burnell was ultimately convicted of third degree assault of an at-risk victim and harassment, and sentenced to three years of supervised probation. He now appeals, contending that the trial court (1) violated his right to be present when it took the verdict in his absence; (2) erroneously admitted evidence that a medical professional recommended that his parents report him to the police; (3) inadequately responded to a jury question; and (4) improperly denied his motion for a mistrial when the prosecutor referred to his exercise of his Fifth Amendment right to remain silent. We address each contention in turn.

## II.    Right to be Present

¶ 5 We are first asked to consider whether the trial court committed reversible error by taking the verdict while Burnell was not present. We conclude that while it was improper to proceed under the circumstances, the error was harmless.

### A. Applicable Law and Standard of Review

¶ 6    "Article II, section 16, of the Colorado Constitution, and the Due Process Clause, as well as the Sixth Amendment to the United States Constitution, guarantee the right of a criminal defendant to be present at all critical stages of the prosecution." *People v. White*, 870 P.2d 424, 458 (Colo. 1994). The United States Supreme Court has held that this right applies "from the time the jury is impaneled until its discharge after rendering the verdict." *Shields v. United States*, 273 U.S. 583, 589 (1927).

¶ 7    This right, however, may be waived either expressly or through the conduct of the defendant such as by voluntarily failing to appear after trial has commenced. *People v. Janis*, 2018 CO 89, ¶ 17 (citing *Taylor v. United States*, 414 U.S. 17, 19 n.3 (1973)). Indeed, the Colorado Rules of Criminal Procedure state that if a defendant has "[v]oluntarily absent[ed] himself after the trial has commenced, whether or not he has been informed by the court of his obligation to remain during the trial," the trial court shall consider the defendant to have waived his right to be present, and the trial court may at its discretion proceed with the trial. Crim. P. 43(b)(1).

¶ 8     Whether proceeding with trial in the absence of the defendant was appropriate, then, rests on whether the trial court correctly determined that the defendant waived his right to be present by *voluntarily* absenting himself.  Whether this absence was a waiver of Burnell's right to be present is a constitutional question that we review de novo.  *Zoll v. People*, 2018 CO 70, ¶ 15.  Where preserved, error in the denial of a defendant's right to be present is reviewed for constitutional harmless error.  *Rushen v. Spain*, 464 U.S. 114, 117-20 (1983); *Zoll*, ¶ 16.  Under this test, constitutional error requires reversal unless the People can "prove beyond a reasonable doubt the absence of any reasonable possibility that the error might have contributed to the conviction."  *James v. People*, 2018 CO 72, ¶ 19.

## B.     Relevant Facts

¶ 9     On May 7, 2013, the court heard closing arguments, and the jury began to deliberate.  At that time, the court told the parties and counsel that if they "could just stay within 15 or 20 minutes of the courthouse, it[']s helpful to us."  The court explained that it would keep the attorneys updated as to whether the jury wanted "to stay

4

through the evening, if they're gonna come back tomorrow, what time, if they order dinner, all those things."

¶ 10    Two days later, at 8:35 in the morning, the jury notified the court that it had reached a verdict. The court contacted the attorneys, but by 9:09, Burnell had yet to arrive at the courtroom. The court asked the defense attorney whether there was "any reason to wait any longer," and defense counsel explained that "someone from [her] office reached [Burnell] very shortly after [they] got the word that the verdict had come in" and that he wanted to be present for the verdict and was on his way.

¶ 11    After a five-minute delay, defense counsel informed the court that she had called Burnell, but he did not answer his phone. She explained that she had called her office to confirm that Burnell had said he was on his way, and told the court she did not know why he was not there yet. The court then made the following findings:

> Okay. I am finding that Mr. Paul Burnell, the Defendant, was given notice that we had a verdict and that he's been given sufficient time to get here for the verdict. I did ask the parties to be 15 or 20 minutes from the courthouse if we were to receive a verdict. It's now been 40 minutes, I believe, since those notifications went out, and we've had a jury waiting, so I'll be proceeding with the taking of the verdict in

absentia of Mr. Burnell given that I find that he's given up his right to be present for the verdict since he was notified and there's — he's been given — or given us no reason not to proceed.

¶ 12    The court called the jury in and heard the verdict. Immediately afterward, the court ordered Burnell's bond forfeited and issued an arrest warrant. Burnell arrived in the courtroom, it appears, while the court was in the process of doing so. The court did not attempt to determine why Burnell had arrived late.

## C.    Analysis

¶ 13    On appeal, the People argue that the simple fact that Burnell was required to be within fifteen to twenty minutes of the courthouse but failed to arrive within forty minutes is sufficient to determine his absence was voluntary. We disagree.

¶ 14    In order to proceed in Burnell's absence, the trial court was required to first find that Burnell was *voluntarily* absent. On its face, then, the mere fact that Burnell was absent at a time he was required to be present, without more, is insufficient to find a waiver of his right to be present. *See United States v. Beltran-Nunez*, 716 F.2d 287, 291 (5th Cir. 1983) (A defendant's right to be present at trial "cannot cursorily, and without inquiry, be deemed by the trial

6

court to have been waived simply because the accused is not present when he should have been.").

¶ 15     Unfortunately, the trial court made no attempt to determine whether Burnell's absence was voluntary.  Having been informed that Burnell wanted to be present and was on his way, the court instead relied on the fact that Burnell had "given [the court] no reason not to proceed," in effect requiring Burnell, or his attorney, to demonstrate that his absence was *involuntary* in order to preserve his right to be present.

¶ 16     Whether an absence is voluntary may, of course, be inferred from the circumstances.  In *People v. Trefethen*, the defendant had informed the court that he was experiencing car problems.  751 P.2d 657, 658 (Colo. App. 1987).  After waiting for two hours, the court considered a number of factors — that the defendant's last known address was within walking distance of the courtroom, that he did not suffer from physical impairments, and that he made no attempt to secure alternative transportation — in determining that the defendant was voluntarily absent.  *Id.* at 659.

¶ 17     Here, by contrast, the court made no inquiries into Burnell's circumstances.  Indeed, the only other information the trial court

had was that Burnell was on his way. Rather than attempt to ascertain the cause of Burnell's tardiness, the trial court merely assumed that an unexplained absence must necessarily be a voluntary absence. Thus, the trial court erred.

¶ 18　However, this violation clearly did not contribute to Burnell's conviction. When the court elected to proceed in Burnell's absence, the jury had already arrived at its verdict. The only remaining steps were for the jury to deliver the already-completed verdict forms to the court and for the verdict to be read aloud in open court.

¶ 19　Burnell argues that the denial of his right to be present when the jury returned its verdict prevented him from requesting the court to poll the jury, or at least from assisting his attorney in making the decision to do so. Citing a decision by the Supreme Court of Alaska, Burnell suggests that "requiring each juror to assume the burden of his decision and affirm it in the defendant's presence" could cause a juror to hesitate or alter his or her decision. *Lee v. State*, 509 P.2d 1088, 1094 (Alaska 1973).

¶ 20　Under the common law, in conducting a poll of the jury the court's "object is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or

induced to sign a verdict to which he does not fully assent."
*Humphries v. District of Columbia*, 174 U.S. 190, 194 (1899).
Though Colorado has since codified the right to seek a poll of the jury in Rule 31(d) of the Colorado Rules of Criminal Procedure, this goal remains the same. *See People v. Auman*, 67 P.3d 741, 767 (Colo. App. 2002) (suggesting that the purpose of polling the jury is to verify the verdict in a situation free of jury-room coercion), *rev'd on other grounds*, 109 P.3d 647 (Colo. 2005).

¶ 21    Here, any suggestion that a poll of the jury could have altered the outcome is wholly speculative. Notably, the defense attorney, who was certainly in a position to assess whether a jury poll might have been beneficial, did not request one. There is nothing in the record, or even asserted on appeal, to suggest that the jury's verdict was the result of coercion, and we have no reason to believe that any juror, having arrived at a verdict, was likely to have renounced his or her decision upon questioning by the court. To reverse, as Burnell urges us to do, on the mere possibility that a poll in the presence of a defendant would have a different outcome from a poll in his or her absence would require reversal in every case in which

the defendant was absent, but not voluntarily so, when the verdict was received.

¶ 22     Of course, we recognize that it is not Burnell's burden to demonstrate harm here.  Rather, the People must prove harmlessness of constitutional error beyond a reasonable doubt. *James*, ¶ 19.  However, we conclude that demonstrating constitutional harmlessness does not require dispelling wholly speculative concerns.  *See* COLJI-Crim. E:03 (2018) (defining "reasonable doubt," in part, as "not a vague, speculative or imaginary doubt").

¶ 23     It is important to note that we do not suggest that receiving a verdict in a defendant's nonvoluntary absence will always be harmless beyond a reasonable doubt.  To do so would essentially convert the delivery of the verdict into a noncritical stage.  On the other hand, reversal based on the mere possibility that a polled juror would waver in his or her commitment to the verdict could be tantamount to a decision that the error would never be harmless — essentially making this a structural error.  There is no legal support for such a bright line rule on either end of the spectrum.

¶ 24    Rather, in our view, a reasonable possibility that the error might have contributed to the verdict arises when the record demonstrates some basis for concern that there may have been a reluctant or holdout juror.  This may be indicated, for example, by a particular juror's tone or demeanor while responding to a jury poll, the existence of jury questions that reflect juror reluctance, or the need during deliberations to provide a "modified *Allen*" instruction in the face of a deadlock.[2]  Because nothing in the record suggests any juror was conflicted in this case, we discern no reasonable possibility that Burnell's absence contributed to the verdict.[3]

### III.   CRE 403

¶ 25    Burnell next argues that the trial court erred when it allowed the prosecution to introduce evidence that Arline consulted with a mental health professional before deciding to call the police.

---

[2] A "modified *Allen*" instruction may be given to a deadlocked jury in an effort "to encourage jurors to reach a verdict without coercing them into doing so."  *Gibbons v. People*, 2014 CO 67, ¶ 1 (citing *Allen v. People*, 660 P.2d 896, 898 (Colo. 1983)).

[3] We note that the jury apparently deliberated for approximately a day and a half, while the presentation of evidence took slightly less than a day.  On the facts of this case, we do not consider the length of deliberations alone sufficient to create a reasonable doubt about the harmlessness of the error.

Burnell contends that the evidence was not relevant and, even if it had been, any probative value was substantially outweighed by the danger of unfair prejudice. We perceive no error.

¶ 26 We review the trial court's evidentiary rulings for an abuse of discretion. *People v. Russell*, 2014 COA 21M, ¶ 22, *aff'd*, 2017 CO 3. A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 27 Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

¶ 28 At trial, Burnell argued that John "wanted a reason to kick [him] out of the house" and "was frustrated that his 33-year-old son was still living at home." The prosecution argued that evidence that John and Arline sought outside input, therefore, was relevant to demonstrate their motive for calling the police.

¶ 29 But even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." CRE 403. Burnell contends that it was, asserting that the evidence injected consideration of mental illness into the

case and created the impression that a medical professional familiar with Burnell believed that he was a danger. We are unconvinced.

¶ 30 The evidence introduced at trial was that Arline called a colleague — who was both a psychiatrist and a psychologist — who was familiar with Burnell, and that he recommended she call the police. There was no testimony that the colleague believed Burnell was dangerous. Nor was there testimony that Burnell had ever been diagnosed or treated by the colleague — or by anyone else.

¶ 31 In light of this testimony, we cannot say that the trial court acted arbitrarily, unreasonably, or unfairly in admitting the evidence.

## IV. Jury Questions

¶ 32 We now turn to Burnell's contention that the trial court did not properly respond to a question from the jury during deliberations. We perceive no error.

### A. Background

¶ 33 During deliberations, the jury submitted a question to the court asking "Could we have a definition of third degree assault?" The court initially suggested a response directing the jury to instruction number ten, which listed the elements of the crime.

Both the prosecutor and defense counsel said that they believed that was an appropriate response.

¶ 34    In preparing the new instruction, the court noticed that instruction number nine, defining the elements of assault in the third degree on an at-risk adult, referred to "third degree assault as described in instruction number 10," but instruction number 10 listed the "elements of the crime of assault in the third degree."

¶ 35    Believing that the alternative phrasing prompted the jury's confusion, the court provided the following response:

> Jury Instruction 9, paragraph 3, refers to "third degree assault" as described in instruction 10 ("assault in the third degree"). The offenses of "third degree assault" and "assault in the third degree" are the same. Therefore, you are referred to Jury Instruction 10 which contains the elements for the offense of "third [de]gree assault" (also known as "assault in the third degree.").

Burnell's counsel stated that he had no objection.

## B.    Analysis

¶ 36    Whether to provide additional instructions in response to a question from the jury is left to the sound discretion of the trial court. *People v. Bass*, 155 P.3d 547, 552 (Colo. App. 2006).

14

Because Burnell did not object to the trial court's instruction, we review for plain error. *Id.* at 551.

¶ 37    Absent a showing to the contrary, we presume that the jurors understood the court's instructions. *People v. Fell*, 832 P.2d 1015 (Colo. App. 1991). But when a jury "affirmatively indicates that it has a fundamental misunderstanding of an instruction it has been given, the basis for a presumption that the jury understands the instruction disappears." *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo. 1986). In such cases, the trial court should "give appropriate additional instructions in response to the jurors' request unless: (i) the jury may be adequately informed by directing their attention to some portion of the original instructions . . . ." *Id.* (quoting III *ABA Standards for Criminal Justice* § 15-4.3(a) (2d ed. 1980)).

¶ 38    Here, the jury did not express confusion about the content of instruction number ten, defining assault in the third degree. Rather, the jury indicated that it believed it did not have an instruction defining third degree assault. The trial court's response properly directed the jury to the appropriate instruction and informed the jury that assault in the third degree and third degree assault refer to the same crime.

15

¶ 39    Further, even if the jury had some underlying confusion about the content of instruction number ten, the court's response made clear that it was only addressing an inconsistency between instruction numbers nine and ten.  This highly specific response was not likely to discourage the jury from seeking further clarification if it so desired.  Accordingly, we perceive no error in the trial court's response.

## V.    Motion for Mistrial

¶ 40    Finally, we address Burnell's claim that the trial court erred when it denied Burnell's motion for a mistrial after the prosecutor, in his opening statement, improperly referred to Burnell's invocation of his Fifth Amendment rights.  Again, we perceive no error.

## A.    Background

¶ 41    In his opening statement, the prosecutor described the circumstances of Burnell's arrest.  He explained that when an officer asked Burnell about the incident, Burnell admitted that he and his father had argued and that his father was in fear of him, but he denied that he had ever hurt his father.  The prosecutor then

16

stated, "After a couple more questions, [Burnell] did invoke his Fifth Amendment rights."

¶ 42    Burnell's counsel immediately objected and moved for a mistrial.  After some discussion, the trial court denied the motion for a mistrial and instead elected to give a curative instruction:

> It was improper for the prosecutor to have referred to Mr. Burnell's assertion of his Fifth Amendment right to remain silent, as the Defendant is never compelled to speak to the police and the fact that he does cannot be used as an inference of guilt and should not prejudice him in any way.  You are again reminded that opening statements are not evidence.  You are instructed to disregard the prosecution's reference to Mr. Burnell's assertion of his Fifth Amendment right to remain silent.

### B.    Standard of Review

¶ 43    The decision to grant or deny a motion for mistrial is left to the sound discretion of the trial court.  *People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011).  In such circumstances, we will not disturb the trial court's decision absent a clear showing of an abuse of discretion and prejudice to the defendant.  *Id.*

¶ 44    Where the underlying violation is of constitutional dimension and the mistrial motion was made at the time of the violation, we

review an erroneous denial of the motion for constitutional harmless error. *People v. Santana,* 240 P.3d 302, 309 (Colo. App. 2009)*, rev'd on other grounds,* 255 P.3d 1126 (Colo. 2011).

## C.    Analysis

¶ 45    It is well established that "the prosecution may not refer to a defendant's exercise of his Fifth Amendment right to remain silent in the face of accusation." *People v. Key,* 185 Colo. 72, 75, 522 P.2d 719, 720 (1974).  But not every reference to a defendant's exercise of the right to remain silent requires reversal.  *Id.*  Reversal is only required where the prosecutor's comment on the defendant's exercise of the right creates an inference of guilt or where the prosecutor argues that the defendant's silence constituted an implied admission of guilt.  *People v. Ortega,* 198 Colo. 179, 183, 597 P.2d 1034, 1036 (1979); *People v. Cornelison,* 44 Colo. App. 283, 286, 616 P.2d 173, 176 (1980).

¶ 46    Here, the prosecutor stated that Burnell answered several questions, and then chose to exercise his right to remain silent.  In reciting this sequence of events, the prosecutor did not directly

argue that Burnell's silence reflected guilt.[4] Nor did he provide any detail about the specific questions Burnell refused to answer. Nevertheless, we perceive no valid reason for the prosecutor to have mentioned Burnell's invocation of his right to remain silent.

¶ 47 This conclusion, however, does not end the inquiry. The issue on appeal is not whether the prosecutor engaged in misconduct, for he undeniably did. Rather, the issue is whether the trial court erred in electing to provide a curative instruction instead of granting a mistrial. We conclude it did not.

¶ 48 "A mistrial is a drastic remedy and is warranted only if the prejudice to the accused is too great to be remedied by other means." *People v. Rosa*, 928 P.2d 1365, 1372 (Colo. App. 1996). Where a curative instruction is sufficient to remedy any prejudice, a prosecutor's improper comment on a defendant's silence does not necessitate a mistrial. *See id.*; *see also People v. Rivera*, 968 P.2d 1061, 1067 (Colo. App. 1997) (declining to reverse where the trial court sustained the defendant's objection to the prosecutor's

---

[4] We acknowledge that several statements made by the prosecutor outside of the hearing of the jury suggest that he may have intended to make an improper argument. However, no such argument was ever made to the jury.

comment during closing argument and instructed the jury to disregard the comment).

¶ 49　　The prosecutor's comment during his opening statement was brief and not repeated. The context of the comment was not so detailed as to suggest to the jury that Burnell stopped being willing to talk as soon as his answers to the officer's questions became incriminating. And the court provided a curative instruction that reminded the jury that the prosecutor's statement was not evidence, informed the jury that Burnell was not required to speak to the police that evening, admonished the jury not to draw any inference of guilt from the silence, and directed the jury to disregard the statement. Importantly, the trial court's curative instruction explicitly told the jury that it was improper for the prosecution to even mention the matter.

¶ 50　　For these reasons, in our view, the prosecutor's comment did not so prejudice Burnell as to warrant a mistrial.

## VI.　Conclusion

¶ 51　　The judgment is affirmed.

JUDGE RICHMAN and JUDGE HARRIS concur.