22CA1506 Peo v Dominguez 09-12-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1506
Jefferson County District Court No. 21CR173
Honorable Diego G. Hunt, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Andrew Dominguez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE HARRIS
Brown and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

---

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kevin M. Whitfield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1   Defendant, James Andrew Dominguez, appeals the judgment of conviction entered on a jury verdict finding him guilty of aggravated cruelty to animals.  We affirm.

## I.   Background

¶ 2   Dominguez was charged with one count each of aggravated cruelty to animals for injuries to a kitten that resulted in the kitten having to be euthanized, cruelty to animals for the disappearance of a different kitten, and harassment for actions directed toward his then girlfriend, J.G.

¶ 3   According to the evidence presented at his trial, Dominguez and J.G. began living together in October 2020.  J.G. adopted two kittens for her children around the time she moved in with Dominguez.  A few weeks later, due to problems in the relationship, J.G. and her children moved out of Dominguez's apartment, but J.G. did not take the kittens with her at that time.

¶ 4   The two remained in phone contact but had frequent arguments.  During one call, Dominguez said one of the kittens was missing.  Shortly thereafter, they had an "explosive" argument over the phone during which Dominguez told J.G. she had made him

"lose control." During the argument, J.G. could hear lots of commotion, like "things being tossed around" and broken.

¶ 5     Later that day, when J.G. called Dominguez to check on him, he started crying and told her that "he did something that he couldn't take back." The next morning, Dominguez texted J.G. and said that he thought something was wrong with the remaining kitten, that she appeared to be going blind and she could not walk properly.

¶ 6     J.G. went to the apartment that day and found the kitten with blood around her nose and mouth and unable to walk or control her body. J.G. took the kitten to a veterinarian. The kitten could not be successfully treated, so she was euthanized.

¶ 7     At trial, the prosecution called both the treating veterinarian and an expert pathologist who performed a necropsy on the kitten. Those witnesses testified about the kitten's injuries and their likely cause.

¶ 8     The jury acquitted Dominguez of the cruelty to animals count related to the one kitten's disappearance and the harassment

count, but it found him guilty of the aggravated cruelty to animals count related to the other kitten's injuries.

## II.     Sufficiency of the Evidence

¶ 9     Dominguez contends that the prosecution presented insufficient evidence to sustain the jury's verdict finding him guilty of aggravated cruelty to animals.  We disagree.

### A.     Standard of Review

¶ 10     In assessing the sufficiency of the evidence, we review the record de novo to determine whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a finding by a reasonable jury that the defendant is guilty of the charge beyond a reasonable doubt.  *People v. Donald*, 2020 CO 24, ¶ 18.

¶ 11     On review, we give the prosecution "the benefit of every reasonable inference which might be fairly drawn from the evidence," *People v. Perez*, 2016 CO 12, ¶ 25 (citation omitted), and "[i]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element," *People v. Chase*, 2013 COA 27, ¶ 50.

3

### B. The Evidence Was Sufficient to Support Dominguez's Conviction

¶ 12     A person commits aggravated cruelty to animals if he "[1] knowingly [2] tortures, needlessly mutilates, or needlessly kills [3] an animal." § 18-9-202(1.5)(b), C.R.S. 2024. The prosecution must prove every element of the charged offense beyond a reasonable doubt. *Thomas v. People*, 2021 CO 84, ¶ 10.

¶ 13     Dominguez contends that the evidence was insufficient to prove that he knowingly tortured or needlessly mutilated the kitten. We disagree.

### 1. The Evidence Supported a Finding of Mutilation

¶ 14     The aggravated cruelty to animals statute does not define the word "mutilate." In interpreting a statute, we construe undefined words and phrases "according to their common usage." *People v. Griego*, 2018 CO 5, ¶ 25.

¶ 15     We agree with Dominguez that one common definition of mutilate is "[t]o severely and violently damage; esp[ecially] to cut off or cut out an essential part of; to maim or cripple." Black's Law Dictionary 1225 (12th ed. 2024).

4

¶ 16    Dominguez contends that, applying this definition, the prosecution failed to prove beyond a reasonable doubt that the kitten sustained injuries amounting to mutilation.  We are not persuaded.

¶ 17    J.G. testified that when she arrived at Dominguez's apartment to collect her things, the kitten was seated "on her hind legs and scooting with her front paws."  The friend who accompanied J.G. to the veterinarian testified that the kitten "wasn't able to stand."

¶ 18    The treating veterinarian explained that his physical examination revealed "a couple of abnormalities," including "the potential that the left front leg was looser in its attachment to the body wall than the other leg."  He opined that this injury could have been caused by someone "pulling" or "dislocat[ing]" the kitten's leg from her body.

¶ 19    The expert pathologist testified that the kitten sustained blunt force trauma causing brain hemorrhages on the left side of her head.  He characterized the injuries as "very serious" and likely the result of multiple instances of trauma.

¶ 20    The evidence also showed that the kitten was effectively blinded.  On the day the kitten was euthanized, Dominguez told J.G. that the kitten's eyes were "glossy," and she would "run[] into things" when she attempted to walk.  The pathologist said that the kitten had hemorrhages behind her eyes that made her eyes "bulge."  When J.G. saw the kitten, she noticed that she could not close her left eye, and the friend testified that the kitten's eyes were "crossed."

¶ 21    From this evidence, the jury could reasonably have concluded that the kitten was "severely damaged," "crippled," or "maimed." Accordingly, viewing the evidence as a whole and in the light most favorable to the prosecution, we conclude that the evidence supported a finding that the kitten had been mutilated.

### 2.    The Evidence Supported a Finding That Dominguez Acted Knowingly

¶ 22    Dominguez also argues that the evidence was insufficient to prove that he knowingly caused the kitten's injuries.  Again, we disagree.

¶ 23    A person acts "knowingly" "with respect to a result of his conduct, when he is aware that his conduct is practically certain to

cause the result." § 18-1-501(6), C.R.S. 2024. "Evidence of a defendant's intent is usually only proved by relying on circumstantial evidence, and 'the finder of fact may properly infer the intent to commit [the offense] from the defendant's conduct and the [surrounding] circumstances.'" *People v. Lawrence*, 2019 COA 84, ¶ 21 (citation omitted).

¶ 24    The evidence showed that Dominguez had exclusive control over the kitten when the kitten was injured. Just before J.G. went to the apartment and discovered the injured kitten, Dominguez admitted to J.G. that he had lost control and "d[one] something that he couldn't take back." He would not say what he had done.

¶ 25    The expert pathologist testified that the kitten's injuries were caused by "impact trauma," meaning the kitten "was hit" on the left side of her head. And as noted, the treating veterinarian said that one of the kitten's legs might have been pulled or dislocated from her body.

¶ 26    Dominguez's theory, argued through counsel, was that his recording equipment could have fallen on the kitten. The pathologist acknowledged that one instance of a large object falling

on the kitten could have caused the injuries, but he opined that it was more likely, based on the number and nature of the kitten's injuries, that the kitten had sustained "multiple instances of trauma."

¶ 27 It was up to the jury to determine issues of witness credibility and to resolve any conflicts in the evidence. *See People v. Kessler*, 2018 COA 60, ¶ 12. And the evidence is not insufficient merely because Dominguez had a competing theory of causation: "where reasonable minds could differ, the evidence is sufficient to sustain a conviction." *Id.*

¶ 28 We conclude that the evidence was sufficient to establish that Dominguez knowingly inflicted the injuries — which amounted to mutilation — on the kitten. The evidence was therefore sufficient to support the conviction for aggravated cruelty to animals.

### III. Prosecutorial Misconduct

¶ 29 Dominguez next contends that the prosecution committed misconduct during closing argument that warrants reversal of his conviction. We disagree.

## A.    Standard of Review and Applicable Law

¶ 30    When reviewing claims of prosecutorial misconduct, we conduct a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).

¶ 31    First, we determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* In doing so, we consider the context of the argument as a whole and view it in light of the evidence before the jury. *People v. Samson*, 2012 COA 167, ¶ 30. The prosecution has wide latitude to make arguments based on facts in evidence and the reasonable inferences that can be drawn from those facts. *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010). The prosecution is also permitted to use rhetorical devices and engage in oratorical embellishment. *Samson*, ¶ 31. And, because arguments delivered in the heat of trial are not always perfectly scripted, we give the prosecution the benefit of the doubt when their remarks are ambiguous or simply inartful. *Id.* at ¶ 30.

¶ 32    However, closing argument cannot be used to mislead or unduly influence the jury. *Domingo-Gomez v. People*, 125 P.3d

1043, 1048-50 (Colo. 2005). To that end, the prosecution may not intentionally misstate the evidence or the law, attempt to inflame the jurors' passions or prejudices, or offer a personal opinion as to the defendant's guilt. *Id.* at 1049; *see also People v. Maloy*, 2020 COA 71, ¶ 61.

¶ 33 Second, if the comments were improper, we determine "whether such actions warrant reversal according to the proper standard of review." *Wend*, 235 P.3d at 1096. We review preserved claims of prosecutorial misconduct for abuse of discretion and reverse only if the error substantially influenced the verdict or impaired the fairness of the trial. *Hagos v. People*, 2012 CO 63, ¶ 12; *People v. Licona-Ortega*, 2022 COA 27, ¶ 87.

## B. Discussion

¶ 34 Dominguez argues that the prosecutor committed misconduct when she (1) misstated the pathologist's testimony; (2) appealed to the jury's passions and prejudices on behalf of a sympathetic animal victim; and (3) commented on his decision to not testify. We perceive no reversible error.

### 1. Mischaracterization of the Evidence

¶ 35     The pathologist testified that the kitten sustained extensive bleeding on her brain and concluded that the bleeding was "most likely secondary to blunt force trauma." When asked by the jury if the kitten's brain hemorrhage was more likely to have been caused by something self-inflicted, such as a fall, compared to an external factor, the pathologist explained that it was 90% or 95% more likely that the injury was caused by an external factor rather than a fall.

¶ 36     During rebuttal closing argument, the prosecutor summarized this portion of the pathologist's testimony as follows:

> You heard from [the pathologist] when he was forced to put a number on it, a number on whether this could have been an accident or whether this was severe blunt-force trauma caused by injuries caused by the defendant. When he was forced to put a number on whether this could have happened by a fall or some sort of an accident, he said 95 percent.

¶ 37     Dominguez asserts that the prosecutor conflated a fall with accidental trauma from an external factor and incorrectly told the jury that the pathologist had said that the injuries were likely to have resulted from severe blunt force trauma *caused by* Dominguez.

11

¶ 38　We agree with Dominguez that the prosecutor's summation of the expert pathologist's testimony was imprecise in some ways, and her comment that the expert had identified Dominguez as inflicting the injuries was a misstatement.

¶ 39　Still, the general gist was mostly accurate: the pathologist did testify that the injuries were caused by blunt force trauma and that it was about 95% likely that the kitten's injuries did not result from a fall, as the prosecutor said.  Moreover, the prosecutor's comments came just after defense counsel had told the jury, correctly, that "no one" had testified that the injuries resulted from "some nefarious act," that "blunt-force trauma [could] be caused . . . [by] an accident," and that the expert "could not rule out an accident."  We conclude that, when evaluated in context, the brief misstatement did not substantially influence the verdict and, therefore, any error was harmless.  *See Licona-Ortega*, ¶ 87.

### 2.　Appealing to the Jury's Sympathy

¶ 40　During closing argument, the prosecutor referred to the kitten as "a 3-pound kitten . . . who can't tell you what happened."

¶ 41    Dominguez contends that the reference was improper because it "appealed to the passions and prejudices of the jury on behalf of the alleged sympathetic animal victim."

¶ 42    But the kitten's small size was relevant to the jury's determination of the severity of the injuries.  And the prosecutor's comment did not invite the jury to decide the case on an improper basis.  To the contrary, the comment emphasized that, unlike some victims, the kitten could not express what happened, so the jury would have to piece together the evidence to arrive at a conclusion. We see nothing improper about the comment.

### 3.    Comment on Dominguez Not Testifying

¶ 43    In rebuttal closing argument, the prosecutor said, "Who knows what happened to [the missing kitten]?  Who knows what happened to [the injured kitten]?  The defendant does. . . .  [T]he defendant knows what happened."

¶ 44    Dominguez contends that the prosecutor's statement amounted to a comment on his decision to not testify at trial and therefore was improper.  We are not persuaded.

13

¶ 45 A criminal defendant has the right to not testify at trial. *People v. Gallegos*, 2023 COA 47, ¶ 89 (*cert. granted in part on other grounds* Feb. 12, 2024). Consequently, a prosecutor may not refer to the defendant's exercise of his right to remain silent. *People v. Burnell*, 2019 COA 142, ¶ 45. Even then, reversal is only required where the prosecutor's comment on the defendant's silence creates an inference of guilt or where the prosecutor explicitly argues that the defendant's silence constitutes an implied admission of guilt. *Id.*

¶ 46 The challenged statement was not a comment on Dominguez's decision not to testify. Rather, as the prosecutor explained, she was responding to defense counsel's argument that "no one knows exactly how [the kitten] was hurt" and that "curiosity [likely] killed the cat." At the end of her argument, the prosecutor told the jury

> [Defense counsel] argued no one knows what happened to the kittens. Curiosity killed the cat. But the defendant knows what happened. Curiosity did not kill [the injured kitten], curiosity did not lose [the missing kitten]. It was the defendant. And we ask that you find him guilty.

14

Because the statement did not imply that Dominguez had an obligation to testify or suggest that his failure to testify implied his guilt, the statement was not an improper comment on his right to silence.

## IV. Disposition

¶ 47 The judgment is affirmed.

JUDGE BROWN and JUDGE LUM concur.