23CA1118 Peo v Apple 04-30-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1118
El Paso County District Court No. 22CR4992
Honorable Marcus Henson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ryan John Apple,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kirstiana Perryman, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Ryan John Apple (Apple), appeals the judgment of conviction entered on a jury verdict finding him guilty of illegal discharge of a firearm and prohibited use of a weapon — discharge. On appeal, Apple contends that the district court erred by (1) admitting certain statements he made that were recorded on the police officers' body cameras, because the footage had little probative value, was unduly prejudicial, and was cumulative of other evidence; and (2) allowing the prosecutor to engage in misconduct by misstating the evidence. We disagree with his contentions and, therefore, affirm the judgment of conviction.

## I.    Background

¶ 2    Apple lived in the upstairs unit of a split-level duplex; another family lived in the downstairs unit. Apple owned a handgun which he used for protection. One night while preparing for bed, Apple was loading the firearm when it discharged. A bullet entered the lower unit and narrowly missed a resident but did not cause any injuries.

¶ 3    The neighbor called 911, and police arrived. An officer testified that Apple appeared "highly intoxicated, combative, and verbally argumentative" and said that Apple smelled of alcohol; had

bloodshot, watery eyes; and slurred his speech throughout the interaction.

¶ 4     Apple was charged with illegal discharge of a firearm, two counts of prohibited use of a weapon — discharge and under the influence of alcohol, and reckless endangerment.  The jury found him guilty of illegal discharge of a firearm and prohibited use of a weapon — discharge, but it acquitted him of the other counts.  The court sentenced Apple to two years of supervised probation, among other conditions.

## II.     Evidentiary Rulings

¶ 5     Apple contends that the district court erred by admitting certain footage from the police officers' bodycams in violation of CRE 403.  We disagree.

### A.     Additional Facts

¶ 6     At trial, the prosecution sought to introduce four separate videos.  Defense counsel objected to portions of two of the videos.

¶ 7     The first video shows interactions between Apple, his neighbor, and the police.  Apple objected to the following portions of the video:

- He tells the police, "She [(the neighbor)] shouldn't have done that. Trying to talk shit, like, who are you, ma'am?" and tells the neighbor, "My lawyer will make you cry. I don't have to shut up, I have a freedom of speech, I know my rights."

- The officer informs Apple, "If you keep acting up, I'm gonna put you in handcuffs and I'm gonna put you in the back of the car. Do you understand? Okay, this is the last warning I'm going to give you."

- Apple talks to his family members, who are off-screen, asking, "Are you guys recording this? . . . They can't put me in handcuffs."

- Apple, still speaking with his family, says, "They gonna regret it, trying to handcuff me. They are gonna regret it, I'm smarter than both these cops combined. It don't matter, let them do it, I wish they would, I really wish they would, Mom."

¶ 8 The second video shows police trying to locate the bullet hole resulting from Apple's discharged firearm. Apple objected to the following portions of this video:

- He refers to the bullet hole and asks one of the officers, "Can I show you Ma'am, before you try to kill me and put me at gunpoint?"

- An officer asks, "Where did it [the bullet] go? If I had you at gunpoint, then it would have already happened."

- The officers prevent Apple from entering his apartment, telling him to "stay out there and tell me where you shot it."

- Apple responds by pointing and saying, "It's over there by the fridge, like look left, by the fridge. Damn, you guys really on some uptight killa shit huh?" in addition to using the "n" word and other expletives.

- The officer assures Apple, "Nobody has drawn a gun on you, nobody has done anything, what are you talking about at gun point?" and asks him if he understood the concerns about the bullet entering another unit.

- Apple acknowledges, "[The bullet] did go into the floor, I'm sorry."

¶ 9 The court admitted the first video with some redactions (which did not include any of the portions described above) and the second

4

video in full, finding that the admitted statements went to Apple's state of mind following the incident and showed his intoxicated state or level of functioning.

### B. Standard of Review and Applicable Law

¶ 10    We review a district court's evidentiary rulings for an abuse of discretion. *People v. Burnell*, 2019 COA 142, ¶ 26. A district court abuses its discretion when its rulings are manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Montoya*, 2024 CO 20, ¶ 26.

¶ 11    "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Although relevant evidence is generally admissible, it "may be excluded if the risk of unfair prejudice substantially outweighs its probative value." *People v. Ray*, 2025 CO 42M, ¶ 21 (citing CRE 403). But because CRE 403 "strongly favors admissibility of relevant evidence," an appellate court "must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum

unfair prejudice to be reasonably expected." *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995).

## C. Analysis

¶ 12 Apple contends that the probative value of the challenged portions of the videos was substantially outweighed by the risk of unfair prejudice, confusion of the issues, and presentation of cumulative evidence. He argues the challenged portions of the videos (1) were only marginally probative of his level of functioning and intoxication; (2) risked inflaming a reasonable juror to punish him for his actions after the accident; (3) misled the jury to believe his actions were intentional; and (4) were cumulative. The Attorney General disagrees, arguing that the statements showed Apple's belligerence, intoxication, and attitude toward the victim immediately following the shooting. For three reasons, we discern no abuse of discretion.

¶ 13 First, the statements were probative of Apple's level of functioning immediately following the incident. Specifically, the challenged statements showed that Apple was belligerent and intoxicated. To prove that Apple illegally discharged a firearm, the prosecution had to demonstrate that he acted knowingly or

recklessly when he discharged his firearm into a dwelling or occupied structure. *See* § 18-12-107.5(1), C.R.S. 2025. Therefore, showing video evidence of Apple's intoxicated state was probative to proving one element of the charged offense. *Cf. People v. Arzabala*, 2012 COA 99, ¶ 89 (noting that a jury is free to consider a defendant's alcohol consumption when determining whether the defendant drove in a reckless manner).

¶ 14　　Second, even though the officers testified about Apple's intoxication and level of functioning, "[t]he fact that evidence is cumulative does not, by itself, render the evidence inadmissible." *People v. Morrison*, 985 P.2d 1, 6 (Colo. App. 1999), *aff'd*, 19 P.3d 668 (Colo. 2000); *accord People v. White*, 606 P.2d 847, 849 (Colo. 1980) (noting that evidence does not become inadmissible under CRE 403 merely because the facts have already been established through the testimony of a prosecution witness). Apple seems to argue that the district court abused its discretion because the statements were "needlessly cumulative." Because the videos corroborate the officers' testimony, we cannot say that they were cumulative to the point of constituting an abuse of discretion.

¶ 15    Finally, Apple's statements were made during the course of the police investigation and arrest, and evidence regarding his demeanor and behavior was admissible to demonstrate consciousness of guilt. *See People v. Acosta*, 2014 COA 82, ¶ 60 (holding that describing a defendant's behavior as "guilty-looking" is not meant to be a legal statement of guilt but rather a description of behavior that would lead a jury to the reasonable conclusion that the defendant is conscious of guilt); *People v. Kyle*, 111 P.3d 491, 499 (Colo. App. 2004) ("Evidence of a defendant's behavior . . . may be admissible to show that the defendant was conscious of guilt and, by further inference, committed the crime charged."), *abrogated on other grounds by*, *Zoll v. People*, 2018 CO 70. Contrary to Apple's contention that his behavior risked the jury convicting him as punishment for his behavior toward the police and neighbor, his actions and statements were evidence of his consciousness of guilt that he acted recklessly in loading his firearm while intoxicated.

## III.    Prosecutorial Misconduct

¶ 16    Apple contends that the prosecutor engaged in misconduct by referring to facts not in evidence during closing and rebuttal

argument. Apple objected to two of the prosecutor's statements but not two others. Even assuming it was error to allow the statements, we discern no abuse of discretion.

### A. Standard of Review and Applicable Law

¶ 17 "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). We will not disturb a district court's rulings regarding such statements absent a showing of an abuse of discretion. *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010), *overruled on other grounds by*, *People v. Kennedy*, 2025 CO 63.

¶ 18 We apply a two-step analysis to claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether, based on the totality of the circumstances, the prosecutor's conduct was improper. *People v. Leyba*, 2019 COA 144, ¶ 55, *aff'd*, 2021 CO 54. If the conduct was improper, we apply the appropriate standard of review to determine whether reversal is warranted. *Id.*

¶ 19 For preserved claims of prosecutorial misconduct, "we subject the error to general harmless error review." *People v. Rhea*, 2014

COA 60, ¶ 42 (quoting *Wend*, 235 P.3d at 1097). Under this standard, we reverse only if the error substantially influenced the verdict or affected the fairness of the trial. *People v. Walker*, 2022 COA 15, ¶ 28.

¶ 20    We review prosecutorial statements to which no contemporaneous objection was made for plain error. *Domingo-Gomez*, 125 P.3d at 1053. Plain error occurs only when an error so undermines the fundamental fairness of the trial itself that it casts serious doubt on the reliability of the jury's verdict. *Id.*

### B.    Analysis

¶ 21    During closing argument, the prosecutor stated, "Now, [Apple] says he was [loading his gun] in his bedroom but we knew it happened in the kitchen." Defense counsel objected to this statement and the court told the jurors they would have to rely on their "collective memory of the evidence" presented at trial when they deliberated.

¶ 22    As to the unpreserved statements, the prosecutor said in closing, "Where was the bullet hole? And it's in evidence. Where was the bullet hole? It wasn't in his bedroom. It was in the kitchen." And then in rebuttal, the prosecutor said, "He kept

talking about [loading the weapon] in his bedroom. We know it happened in the kitchen because of the bullet hole and the cartridge and somehow a garbage bag got put over there."

¶ 23    The Attorney General argues that the prosecutor did not misstate the evidence or refer to facts not in evidence, as Apple told the police that he was getting ready for bed. But Apple contends that he never misled the police about where the bullet hole was located, and implying otherwise led the jury to believe he was lying because he never told the police that he was in his bedroom when he was loading his firearm.

¶ 24    Prosecutors may not misstate the evidence or refer to facts not in evidence, *People v. Marko*, 2015 COA 139, ¶ 207, *aff'd on other grounds*, 2018 CO 97, but they can make "reasonable inferences stemming directly from the facts in evidence during closing argument," *Domingo-Gomez*, 125 P.3d at 1051.

¶ 25    We acknowledge that no direct evidence was presented that Apple told police he was in his bedroom when the firearm discharged, and telling the police he was getting ready for bed is not the same as saying he was in the bedroom. But even assuming the

11

prosecutor's statements were misconduct, we conclude for three reasons that any error was harmless or not plain.

¶ 26    First, as to the preserved claim, the court directed the jury to base its decision not on what the prosecutor said, but rather on the jury's collective memory. Without any indication in the record otherwise, we must presume the jury followed the court's instructions. *See Galvan v. People*, 2020 CO 82, ¶ 29.

¶ 27    Second, it was not disputed at trial that Apple had discharged the firearm; he contended the discharge was due to a manufacturing defect. Whether he was in the bedroom or the kitchen when it occurred was immaterial to whether he acted recklessly. Although he claims that statements that he fired the weapon in the bedroom, as opposed to the kitchen, implied that he intentionally targeted his neighbor, the jury acquitted him of the reckless endangerment count. *See* § 18-3-208, C.R.S. 2025 (an individual commits reckless endangerment if he "recklessly engages in conduct that creates a substantial risk of serious bodily injury to another person").

¶ 28    Finally, related to the jury's acquittal of two counts, the split verdict supports that the jury was not swayed by the prosecutor's

alleged misstatements of the facts. *See People v. Snelling*, 2022 COA 116M, ¶ 37 (holding that a split verdict suggests that a jury was not influenced by potentially improper comments).

¶ 29     Therefore, because any error in allowing the prosecutor's misstatements was not plain or was harmless, we decline to reverse on this basis.

## IV.   Conclusion

¶ 30     The judgment is affirmed.

JUDGE PAWAR and JUDGE GOMEZ concur.